In the United States District Court, Middle District PA

| | |
|---|---|
| Glenn H. Stephens III Ph.D. J.D., Plaintiff | |
| v. | Hon. |
| Denise Dieter, Magisterial District Judge, | |
| Nancy Butts, Presiding Common Pleas Judge, | Case No. |
| Ryan Gardner, Common Pleas Judge, | |
| Lycoming County Prison, Defendants | |

Motion for Preliminary Injunction and
Petition of Emergency Writ of Habeas Corpus

I. Introduction

As an initial matter, pro se, indigent, wrongfully imprisoned Plaintiff (maliciously prosecuted for attempted extortion after no lawfully sought restitution for a $500 bounced check), a Berkeley Law School Graduate, and member-in-good standing in E.D. FDC Michigan, apologizes for the untyped, informal nature of this pleading and memorandum.

As an additional preliminary matter, Plaintiff submits this pleading both to enjoin and gain the writ, but also to support the contention, by Edward Nicolas, of systemic constitutional violations by Lycoming Courts [law enforcement and].[1] (Plaintiff seeks Judicial Notice of Nicolas v. Williamsport Police, et al.)

II. Exhaustion and Younger are Inapplicable

Under well established case law, exhaustion of state remedies is inappropriate, and a stay or injunction may be granted, and a writ of habeas corpus issued, where the balancing of equities and irreparable harm favor federal court action. Hollingsworth v. Perry, 558 US 183, 186 (2010)

Further, Younger abstention is inappropriate where state proceeding advance to harass or in bad faith, Huffman v. Pursue, 420 U.S. 415, 424 (1979), Gerson v. N.J., 352 Fed. Appx 749 (3rd Cir, N.J. November 23, 2009), (holding Younger abstention inappropriate under Younger if "state proceedings are being undertaken in bad faith or for purposes of harassment" ... such that deference to the state proceeding will present a significant and immediate potential for irreparable harm.") [Emphasis added.]

III.  Averments of Facts for Purposes of 12(b)(6) Screening, Local Rule 72.2, Local Rule 72.3, and 28 USC Sec 636(b)(1)B, Summary Judgement and Merits

Like his candidacy for Magisterial District Judge and his earlier whistleblower campaign against a landlord ignoring city and PA code - (O) alarms - and the attempted criminal activity of that landlord and his property manager, this motion/petition arises from unrelated campaign-speech true (in emails) against a landlord ignoring renter safety (black mold) and the criminal activity of that landlord (a bounced check of $500 as part of a breach of an exit agreement from the black mold infested rental) which generated Stephens lawful repeated request for restitution. The unlawful retaliatory criminalization of Stephens restitution efforts, intertwined with his ADA/Fair Housing Act complaint and opposition, by Lycoming County Law enforcement + Judge is the real reason he is in prison.

h. On January 10, Judge Gardner held an unconstitutional ultra vires bail hearing i) to vex, harass and in bad faith he raised Stephens bail from $25,000 to $75,000, i) Stephens remains wrongly incarcerated as result of this unconstitutionally excessive, whistleblower-law-retaliatory bail.

IV  Stephens Bail in Ultra Vires Hearing Violates the Privileges + Immunity Clause and the 8th Amendment

A. Bail Inequities Stephens, with no criminal record, has a bail of $25,000 in by a case with no alleged violence, real or threatened. In contrast, stat with the $25,000 bail of VA/CU domiciled Stephens, PA bails in the same court system with real violence include

   a. James Center, Williamsport $25,000 bail. Grabbed girlfriend by neck, choked her, slammed her up against wall, forced her from 1st to 4th floor. Strangulation, reckless endangerment, false imprisonment, simple assault, harassment. D Holmes, 2 men arrested following separate domestic disturbance. Williamsport Sun Gazette 6, Feb. 6 2025.
   b. $5000 Bradley Bailey, punched another man at least 4 times, knocking him unconscious, fracturing orbital sockets. Bradford County man faces assault charges. Sun Gazette, Feb. 12, 2025.
   c. Elizabeth Torok spit in face of hospital security, lunged at him, drug fingernails on his arm, drawing blood, and attempted to bite him. Dieter got bond at $13000 (sic)! for aggravated assault and harassment. Hospital patient alleged actions result in charges. Sun-Gazette, Feb. 13 2025
   d. City man crashed into a car, then fled. Charged with hit and run. Dieter set bond at $25,000. City man (Terence Douglass) charged with hit and run following Jersey Shore crash. Williamsport Sun Gazette, February 12, 2025.

Although Stephens neither threatened nor engaged in physical violence nor damaged property, his bail

Endnotes

1  Plaintiff asks that the Court take judicial notice of Nicolas v. Williamsport Police Bureau, et al., Civil No. 4:24-CV-2086 (MD PA 2024)(alleging systematic violations of constitutional rights and due process). Plaintiff's survey of his cell block found a failure to Mirandize in 7 of 14 cases. The notion that Lycoming Police seldom fail in this regard belies objective reality

4

With that overview as context, Stephens avers for 12(b)(6), summary judgement and merit, and for this motion/petition:
a) Stephens is a candidate for WDS to replace Aaron Biichle.
b) In 2023, Biichle refused to cease handling a landlord/tenant case Stephens removed to Denver FDC c) Wrongfully arrested in August 2024, after he sought restitution, opposed his landlords' refusal to accommodate ADA/Fair housing for purported extortion, Stephens exhausted HUD administrative remedies in Sept. 2024 and d) removed his coming case to Wyoming FDC on or about December 5, 2024, e) although, as a matter of law, removal quashed his bench warrant* and deprived Lycoming County of jurisdiction** Stephens was wrongly arrested on January 10, 2025 f) Stephens was wrongly imprisoned in Cumberland County Prison from Jan. 10-12, then transferred and wrongly imprisoned from January 13 to the present. g) Because the DA's office admitted on January 16, that they monitor Stephens Facebook page, the DA and judges Butts and Gardner, knew Stephens case was removed but proceeded ultra vires in bad faith, to harass, in violation of the 4th and 14th amendments, Section 1983, the supremacy and diversity jurisdict clauses and whistleblower law

\* Because his vehicle was undrivable and he lacked means to reach his October 29, 2024 preliminary hearing, Stephens timely waived both by phone — 3 calls prior to hearing and a written waiver. Judge Gardner admitted this on January 21st, 2025, admitting Stephens waiver by mail had been received timely. Despite waiver, MJ Denise Dieter issued a bench warrant for Stephens on Oct 31, with Butts signing off. Dieter and Butts knew or should have known Stephens waived. But they retaliated for his whistleblowing.

\* See Bio converge v Attarwala 2017 US Dist. Lexis 37621, "Removal immediately divests jurisdiction" quashing, for e.g. state writ of garnishment."

B. Stephens Expert Statistical Analysis

As Stephens' resume would (will) show, but for his unlawful imprisonment in retaliation for whistleblowing (sovereign immunity does not apply to PA governmental entities, all public bodies are covered) and his MJ campaign to remove Biichle over his constitutionally protected criticisms of STEP Bureau of Codes, implied warranty of habitability breaching landlords (black mold, Toxoplasmosis, failure to install or maintain CO alarms (Brian Rogan, Kelly Rogan, Rogan LLC, property manager Jeff Johnson; Ardy Harris, Green Valley Real Estate, INC Harris Realty property manager Dunn Waschar), the lawyers who negligently per so suborned these breaches or attempted STEP $ theft (Washer), criminal banned (nack (Rogan) like Brendan Geist; McNerny, Page; Leroy Kaiser), COVID eviction ban violations (Dale Tice, Larry Kaiser), ADA, FHAA, reasonable accommodation restitution request retaliation and ADEA retaliation (Washer, Harris, Green Valley, Andy Harris) Stephens was wrongly imprisoned and given a privileges + immunity clause violating 8th amendment excessive Bail -

But for that imprisonment, Stephens could prove he is a Kumho Tires Daubert statistical analysis expert based on his resume.

Stephens $25,000 bail is not only retaliatory and excessive under the 8th Amendment but facially violates the priviliges and immunities clause as table 1 shows -

(apologies, Stephens ran out of lined paper)

## Table 1

| "Perp" "Alleged" | State(s) | Bail/Date |
|---|---|---|
| Glenn Stephens — Attempted Extortion, Harassment, inter alia requesting gun restitution, no violence or threat of violence | CO VA | $25,000 January 21, 2025 |
| James Confer — Grabs gf, chokes, slams on wall, forced her to second floor, strangulation, false imprisonment, strangulation, harassment | PA | $25,000 February 6, 2025 |
| Bradley Bailey — punches man 6 or more times, knocks unconscious, break orbital face bones. assault | PA | $25,000 February 12, 2025 |
| Terence Douglass — Hit and run, property damage to car! (m) (Dieter) | PA | $25,000 February 12, 2025 |
| Elizabeth Toruk — spit in face of security guard, lunged at guard, draw blood with nails, tried to bite guard (m) (Dieter) | PA | $15,000 February 13, 2025 |

Plaintiff asks Court to take judicial notice of dockets in Confer, Bailey, Douglass,

7

Stephens, who has a Ph.D. in Political Science from UCLA studied advanced graduate statistics at Duke University Graduate School of Political Science, and after transferring those courses to UCLA fulfilled the Language or Graduate Statistics requirement to advance to candidacy for his Ph.D. Stephens dissertation — which applies a three person hierarchical Prisoners' Dilemma game to case studies of worker collective action — for example the Great Rail Strike of 1877 and the unionization of Ford motors in the New Deal era — earned a Best dissertation award at UCLA for his graduate class of 1992. Many of Stephens Political Science graduate student colleagues were also international relations or Soviet Studies experts at RAND a historical hotbed of the application of game theory and rational choice to topics like Soviet US arms race, bombing patterns, disarmament. See Sylvia Nasar, A Beautiful Mind, Simon + Schuster, 1998 ("A Biography of John Forbes (Nash) Jr., winner of the Nobel Prize in Economics, 1994). See, Nasar, Chapter 13, "Game Theory at RAND," noting "Military strategists were the first to seize on the ideas of game theory," p. 116. "The Prisoners Dilemma was partly invented at RAND," p. 118.

Courts have routinely included advanced statistical methods like regression analysis and in some instances used game theory ~~~~, to weigh and evaluate evidence and legal elements like causation, ~~

8

Although regression analysis, which produces an $R^2$ (R squared) value based on the fit of variable to a line on a Cartesian coordinate system, generally, whether multivariate or not, uses variable operationalized as indicia with numerical values. But there is a very important regression technique that allows an analyst to include non-numerical variables, by the use of a so-called dummy variable, as the operalization of the variable.

For example, a multivariate regression analysis analyzing the "causal" relationship between, say, the race of federal district court judges and the dependent variable of the number of Title VII plaintiffs winning cases in the court, could use the following dummy variables —

0 — White Judge
1 — Non-White Judge

Those dummy variable numbers could then be plugged into a regression (easy to use versions are found on line) as the independent variable with case percentages as the dependent variable. The entries would look like this —

| | Race of Judge (Ind. Variable) | % Title VII (Dep. Variable) |
|---|---|---|
| Judge 1 | 0 | 2% |
| Judge 2 | 1 | 18% |
| Judge 3 | 1 | 20% |
| Judge 4 | 0 | 0% |
| Judge 5 | 1 | 16% |
| Judge 6 | 0 | 2% |
| | 0 | 1% |

Table 2

Address all letters to:

NAME: _____

LYCOMING COUNTY PRISON
~~PO BOX 247~~ 277 W 3rd St
~~Phoenix, MD 21131~~ Williamsport PA
17701

All inmates are assigned two (2) forty-five minute visiting periods per week. It is the inmate's responsibility to request any visitor and notify that individual of his/her visitation times.

Although strictly speaking a regression analysis cannot prove causation in a metaphysical sense (the bedeviling problem of causation in philosophy and science plays a central place in David Hume's <u>Of Human Understanding</u>, a text that provocatively attacked the metaphysical and epistemological foundation of a priori synthetic categories, thereby jolting Immanuel Kant from what Kant called his "dogmatic slumber,") the $R^2$ value a paricular independent variable yields or the $R^2$ a multivariate model yields, not only shows "least squared" fit (i.e., the distance from the multivariate model's line to each value) or a univariate model's line to each value) but also, the closest thing to causation.

If a model, univariate or multi-, has an $R^2$ of 1 then that model explains all the variation in the dependent variable. A "useless" or failed model has an $R^2$ of 0. Because, to use the term psychoanalysts use, phenomena are "overdetermined" — in other words phenomena have "too many causes" most "good" models range from .3-.5 $R^2$. A $R^2$ of .3 means the model explains 30% of dependent variable variance. An $R^2$ of .5, means 50% of variance.

To make some sense, to grasp these numbers baseball hitting percentage are illustrative. A very good hitter will hit 300 to 400 (of 1000) or in other words, 30-40% of at bats when at bat. Similarly a good model predicts 30-40 percent of variance in the dependent variable. Non-statisticians, missing the analogy with hitting percentage, often mistakenly deduce that a 30-40% -hitting-percentage type $R^2$ of .3 or .4 is poor, wrongly confusing an $R^2$ of .3 or .4 on a scale of 10 to an F grade in school. Because few judges are statisticians

10

Judges routinely misinterpret very good $R^2$ values as a "failing grade" and thereby wrongly conclude the statistical regression analysis failed to support the proposition for which the experts running the analyses for a party. This is a common and widespread analytical, legal mistake.

Along with hitting percentage, one can understand $R^2$ values of .3-.4 as "very good" model-line-fit by remembering what that number really means. To establish with regression analysis, that a variable or multivariate model explains or predicts 30% of variance means that <u>the entire universe of other possible independent variables</u> only explains the other 70%.

To return to the issue of race and judge's % of holdings for plaintiff in Title VII cases, an $R^2$ of .3 would mean <u>every</u> other variable and <u>all</u> other variables in combination - law school, IQ, date of birth, income, socio-economic class of origin, political party, geography/location - only explain 70%. For these reasons .3-.4 are superb, farther than failed F grades as some federal or state judges wrongly conclude.

In the sample of n=5(5 is sufficient) instance of bail amounts for Stephens (domiciled in (D and VA) and confer. Bailey, Douglass and Torok (PA), the use of dummy variables (0 nonPA, 1 PA) and regression analysis would yield an $R^2$ of 1! One. In this matrix the state of the accused accounts for all dependent variable variance. While Stephens understands these numbers are based on a small sample he has little doubt - based on the Sun Gazettes crime/bail reports - that a systematic

16

that data mining would prove that Lycoming County systematically violates the privileges and immunities clause and 8th Amendment prohibition against excessive bail, and has a pattern and practice of such violations of the Constitution for purpose of Section 1983 (see Nicolas cases) and here, the Constitution and the whistleblower Law.

This "localism" has easily ascertainable historical roots. Long before Trumpian nativism and xenophobia were trending, Williamsport and Lycoming County were hotbeds of "localism." In the 90's, block grants for residential treatment facilities and halfway houses created a huge influx into the area from the drug-infested cities of Philadelphia and Harrisburg and Chester. While many of those treated went on to live productive, healthy, drug free lives, a significant number remained addicts, and as addicts and dealers do, committed drug or other crimes to soothe addictions.

With that the crime rate in Williamsport literally skyrocketed by triple digit percentages. And because the more propertied working and professional classes of the area were often the victims (both due to their means and their vulnerability) to street savvy criminals, mostly from the area from Brandon Park to LycomryCrook Road, the mostly black criminals came to be known as "the influx" - a term of derision that overlaps with "the N____ word," "the element" and other more racist terms.

An expert in issues of racism and law, Stephanie submits that the bail-differential disparate impact of this localism is not a conscious, intentional, choice. Institutional racism like this is often not part of the decisional process of the institutional racist. Instead, because

institutional racist, or ageist, or localist fails to engage in the requisite autocriticism and self-evaluation that one must practice to not fall victim to the blinders that impair their vision and decision making; it never occurs to them they are _____ist.

As a result, institutional _____ism — whether ableism, racism, ageism, sexism, or localism, manifest most notably in statistical analysis of the disparate manners in which the statutorily or constitutionally protected category is handled in areas like employment, bail, sentencing, capital punishment, etc.

Although Stephens knows that his 8th amendment violating, privileges and immunities violating bail was a product of the Lycoming County Legal, law enforcement and judicial establisment circling the wagons in retaliation - inter alia to a whistleblowing trouble maker and gadfly; even if that causal explanation fails, for the sake of argument, his ridiculously excessive bail, with no criminal history for alleged attempted extortion that was, in fact, requests for settlement of his ADA/Fair Housing case and restitution for a bounced check is facially unconstitutional based on the non-violent, no violence threatening, no property damaged, nature of his crime vis-a-vis Confer, Bailey, Douglass and Torok.

Whether Stephens bail was animated by malice, to harass, and made in bad faith, or arguendo a product of institutional localism, that bail violates the 8th amendment, and thus the Privileges and Immunity clause.

13

But, more importantly, in practical day to day terms, the Lycoming County Court systems ultra vires, sans jurisdiction processing and imprisonment of Stephens and his heartbreaking separation from his 16 year old chihuahua Bingo, who is like any 16 year old dog, in mixed health, (Bingo nearly died the last time they were wrongly and unlawfully separated) should be enjoined because absent his release via a habeas corpus petition, Stephens beloved dog may die while Stephens rots in prison, while the Lycoming Court system practices its standard M.O. of dilatory tactics that delay the time to trial of most all cases to 1-2 calendar years, despite the constitutional requirement of speedy trial.

Eschewing *Younger* abstention, to prevent irreparable harm — the death of Bingo — while Stephens is wrongly imprisoned on bad faith harassing charges, to punish Stephen inter alia, for Whistleblower Law opposition to to the way in which Judges handle landlord tenant relations in Lycoming County, Stephens moves respectfully that the court—

    a. Stays or enjoins all Lycoming County Criminal proceedings in CR-1498-2024;
    b. Order all Lycoming County law enforcement and judges to cease and desist absent remand to Lycoming County from the WY EDC;
    c. Grant Stephens petition for a writ of habeus corpus;
    d. Order Stephens released immediately.

Glen Stam



Inmate Name: Leisveh Steinmans III Ph.D. J.D.
Inmate #: 15-30143
Lycoming County Prison 277 W Third Street
P.O. Box 247
Williamsport PA
Phoenix MD 21131-0247   17701

Office of the Clerk
U.S. District Court, Sylvia
Rambo U.S. Courthouse 1501
(4th Street Suite 1C)
Harrisburg PA
pet. for habeas corpus relief

RECEIVED
HARRISBURG, PA
FEB 25 2025
PER _____ DEPUTY CLERK